IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAROSLAVA SHAHIN,

     Plaintiff,

v.                            CASE NO. 8:15-cv-01027-JSM-TBM

DISCOVER FINANCIAL SERVICES, LLC,

     Defendant.

_____/

### DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY LITIGATION OF PLAINTIFF'S CLAIMS, INCLUDING ALL RELATED DISCOVERY, PENDING ARBITRATION WITH LOCAL RULE 3.01(G) CERTIFICATION

Defendant, Discover Products Inc., successor by merger to DB Servicing Corporation, incorrectly named in the instant suit as DFS Services, LLC ("**Discover**"), pursuant to Sections 3 and 4 of the Federal Arbitration Act, 9 U.S.C. §§ 3-4, respectfully moves this Court for entry of an order compelling arbitration of the claims contained in the Complaint (the "**Complaint**" containing the "**Claims**") filed by Jaroslava Shahin ("**Plaintiff**") and staying litigation of Plaintiff's Claims, including all discovery, pending arbitration (the "**Motion**"). Discover and Plaintiff may hereinafter be referred to as the "**Parties**." In support of its Motion, Discover states as follows:

### INTRODUCTION

The clear and concise language of the Parties' written agreement requires arbitration to be compelled. When Plaintiff opened her Discover® account, she entered into a written card member agreement with Discover which requires the Parties to submit disputes to arbitration upon the election of either party. The written arbitration agreement provides clear and sufficient

notice of, among other things: 1) both Discover's and Plaintiff's obligation to arbitrate covered disputes in accordance with the terms thereof; and 2) the fact that disputes between the Parties are governed by the Federal Arbitration Act (the "**FAA**"), 9 U.S.C. §§ 1, *et. seq.*  Plaintiff's Claims are covered by the arbitration agreement between the Parties, and Plaintiff should therefore be compelled to arbitrate her Claims.

### FACTUAL BACKGROUND

In or about January, 2014, Plaintiff applied for and was issued a Discover® brand credit card.   Upon approval of Plaintiff's credit card application, Plaintiff was sent via U.S. mail a Discover® brand credit card and a fulfillment kit which included a cardmember agreement (the "**Agreement**").   Discover contracts with cardmembers pursuant to its cardmember agreements, which outline the terms and conditions governing the cardmembers' use of the Discover credit card.   A copy of the Plaintiff's Agreement is attached hereto as Exhibit A.   Among other provisions, Discover's cardmember agreements contain arbitration provisions requiring the Parties to arbitrate the current dispute.   *See* Ex. A, at p. 3.[1]   The Agreement does allow a cardmember to opt out of the arbitration provision.  Plaintiff, however, did not opt out.

Plaintiff originally filed a complaint against Discover on or about April 9, 2015, in the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("**TCPA**"), and the Florida Consumer Collection Practices Act, Florida Statute § 559.55 ("**FCCPA**"), and the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692e *et seq.* ("**FDCPA**"), and seeking judgment against Discover for damages, costs, interest, and attorneys' fees ("State Court Complaint").

---

[1] Plaintiff's cardmember agreement provides that Discover may change any term of its agreement from time to time.  *See* Ex. A, at 1.  Discover sent Plaintiff a notice of changes to her cardmember agreement, attached hereto as Exhibit B.  These changes became effective February 1, 2015, and only related to the fees and costs associated with arbitration.

Discover was served with the State Court Complaint on April 14, 2015.   Plaintiff voluntarily dismissed the State Court Complaint on April 24, 2015.  On or about April 29, 2015, Plaintiff filed a complaint against Discover in this Court alleging violation of the FCCPA and the TCPA and seeking judgment against Discover for damages, costs, interest and attorneys' fees (the "Complaint").  The Complaint was served on May 4, 2015.  The Court granted Defendant's motion to extend time to answer the Complaint until June 15, 2015.

Discover now files this Motion to invoke its right to have Plaintiff's Claims resolved in binding arbitration pursuant to the Parties' Agreement.

<u>**THE ARBITRATION AGREEMENT**</u>

The Agreement contains an arbitration agreement, conspicuously entitled **"AGREEMENT TO ARBITRATE"** (the "**Arbitration Agreement**"), which is referenced and described in detail on page 3 of the Agreement, and which was accepted by the Plaintiff upon the use of the card associated with the Agreement.  *See* Ex. A, p. 1.

The Agreement expressly states that the Federal Arbitration Act governs the Agreement.  *See id.*, at p. 3.   Additionally, the significance and effect of the Arbitration Agreement is emphasized by the following disclosure:

> If a dispute arises between you and us, either may choose to resolve the dispute by binding arbitration, as described below, instead of in court. Any claim (except for a claim challenging the validity or enforceability of this arbitration agreement, including the Class Action Waiver) may be resolved by binding arbitration if either side requests it. This includes claims and disputes relating to any other Account or agreement you have or had with us. THIS MEANS IF EITHER YOU OR WE CHOOSE ARBITRATION, NEITHER PARTY SHALL HAVE THE RIGHT TO LITIGATE SUCH CLAIM IN COURT OR TO HAVE A JURY TRIAL. ALSO DISCOVERY AND APPEAL RIGHTS ARE LIMITED IN ARBITRATION.

*See id.* (emphasis in original).

The Arbitration Agreement encompasses "any claim," including Plaintiff's Claims against Discover, all of which are based on statutes, as covered claims subject to binding arbitration in accordance with the terms thereof, and pursuant to the FAA and applicable case law. *See id* at 3.

The Arbitration Agreement provides that arbitration of covered claims is to be administered by either the American Arbitration Association ("AAA") or JAMS. *Id.*, at p. 3. The Parties further agreed that arbitration will be conducted in the federal judicial district where the cardholder resides. *See id.*

The Agreement also expressly notifies Plaintiff of her right to reject arbitration on page 1 of the Agreement:

> You accept this Agreement if you do not cancel your Account within 30 days after receiving a Card.  You also accept this Agreement if you or an Authorized User use the Account.  You may, however, reject the "Arbitration of Disputes" section as explained in that section.

*See id.* at p. 1.  To reject the Arbitration Agreement Plaintiff must provide Discover with a "written notice of rejection within 30 days of your receipt of the Card." *Id.*, at p. 3.  Plaintiff provided no such notice to Discover at any time.

Accordingly, Plaintiff's Claims fall within the purview of the Arbitration Agreement and Discover has elected to exercise its contractual right to have Plaintiff's Claims arbitrated.

## LEGAL ANALYSIS

The Arbitration Agreement is governed by the FAA, 9 U.S.C. §§ 1, *et seq.*  Under federal law, this Court must compel Plaintiff to arbitrate her disputes and should stay this litigation, including all discovery, pending resolution of Plaintiff's Claims in arbitration.

A.  <u>**The FAA Applies to and Governs the Arbitration Agreement.**</u>

The FAA applies in this case.  Through the FAA, Congress "mandated the enforcement of arbitration agreements."  *Southland Corp.* v. *Keating,* 465 U.S. 1, 10 (1984) (emphasis added). Section 2 of the FAA, the "primary substantive provision of the Act," *AT&T Mobility LLC v. Concepcion*, 563 U.S. ___, 131 S. Ct. 1741, 1745 (2011) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)), provides that binding arbitration provisions "evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of the contract."  9 U.S.C. § 2.  The FAA applies in both Federal and State courts.  *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 445 (2006); *see also KPMG LLP v. Cocchi*, 565 U.S. ___, 132 S. Ct. 23, 24 (2011) (per curiam) ("Agreements to arbitrate that fall within the scope and coverage of the [FAA] must be enforced in state and federal courts.  State courts, then, 'have a prominent role to play as enforcers of agreements to arbitrate.'" (citing *Vaden v. Discover Bank*, 556 U.S. 49, 59 (2009)).

The United States Supreme Court has described Section 2 of the FAA as reflecting both a "liberal federal policy favoring arbitration," *Concepcion*, 131 S. Ct. at 1745, and the "fundamental principle that arbitration is a matter of contract." *Rent-A-Ctr, W., Inc. v. Jackson*, 561 U.S. ___, 130 S. Ct. 2772, 2776 (2010).  Thus, arbitration agreements, like other contracts, are enforceable in accordance with their terms.  *Concepcion,* 131 S. Ct. at 1745-46.

Under the FAA, "parties [to an arbitration agreement] are generally free to structure their arbitration agreements as they see fit," and may "specify by contract the rules under which that arbitration will be conducted."  *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.,* 489 U.S. 468, 479 (1989).  Accordingly, when an arbitration agreement explicitly designates the FAA as the applicable governing law, courts consistently uphold the intentions of the parties and

enforce the provision.  *See, e.g., Thomas O'Connor & Co.* v. *Ins. Co. of N. Am.,* 697 F. Supp. 563, 566 (D. Mass. 1988); *Rodriguez* v. *Am. Techs., Inc.,* 39 Cal. Rptr. 3d 437, 445 (Cal. Ct. App. 2006) (if parties expressly state that FAA applies, then state arbitration law is preempted); *In re Jim Walter Homes, Inc.,* 207 S.W. 3d 888, 896 (Tex. App. 2006) ("Courts honor the parties' agreement to be bound by the FAA, upholding choice-of-law provisions providing for application of the FAA."); *Langfitt v. Jackson,* 644 S.E. 2d 460, 465 (Ga. App. 2007) (same).

The Arbitration Agreement, itself, provides that the FAA governs the Parties' agreement to arbitrate.  *See* Ex. A, at p. 3.  As a result, there can be no dispute that the FAA governs the Arbitration Agreement.

The FAA would still apply in this matter even absent a provision designating the FAA as the governing law.  The FAA applies to an arbitration agreement arising out of a "contract evidencing a transaction involving commerce."  9 U.S.C. § 2.  Section 1 of the FAA expressly defines "commerce" as "commerce among the several States or with foreign nations …." 9 U.S.C. § 1.  The United States Supreme Court has held that the FAA reaches to the outer limits of Congress' power to regulate under the Commerce Clause.  *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 272-74 (1995).  Simply put, the Arbitration Agreement at issue in this case arises out of the Agreement which clearly, and expressly, involves interstate commerce.

**B.  <u>The Arbitration Agreement Must Be Enforced Under the FAA</u>.**

The FAA "requires courts to enforce the bargain of the parties to arbitrate."  *Marmet Health Care Ctr., Inc. v. Brown*, 132 S. Ct. 1201, 1203 (2012)(quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985)(internal quotations omitted)); *Concepcion*, 131 S. Ct. at 1745 ("courts must place arbitration agreements in an equal footing with other contracts. . . and enforce them according to their terms"); *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 669 (2012) (the FAA "requires courts to enforce agreements to arbitrate according to their terms");

*Cocchi*, 132 S. Ct. at 25-26 ("the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed")(emphasis in original).   The purpose of the FAA is "'to assure those who desired arbitration and whose contracts related to interstate commerce that their expectations would not be undermined by federal judges, or . . . by state courts or legislatures.'"   *Southland Corp.*, 465 U.S. at 13 (citation omitted).   Congress passed the FAA "to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements on the same footing as other contracts . . . "   *Green Tree Fin. Corp.- Ala. v. Randolph,* 531 U.S. 79, 89 (2000) (quoting *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 24 (1991)).   Accordingly, under the FAA, written agreements to arbitrate controversies arising out of an existing contract are "valid, irrevocable and enforceable."  9 U.S.C. § 2.

As the United States Supreme Court has emphasized,

> We agree that Congress, when enacting this law [the FAA], had the needs of consumers, as well as others, in mind.  *See* S. Rep. No. 536, 68th Cong., 1st Sess., 3 (1924) (the Act, by avoiding "the delay and expense of litigation," will appeal "to big business and little business alike . . . corporate interests [and] . . . individuals"). Indeed, arbitration's advantages often would seem helpful to individuals, say, complaining about a product, who need a less expensive alternative to litigation.  *See, e.g.*, H. R. Rep. No. 97-542, p. 13 (1982) ("The advantages of arbitration are many: it is usually cheaper and faster than litigation; it can have simpler procedural and evidentiary rules; it normally minimizes hostility and is less disruptive of ongoing and future business dealings among the parties; it is often more flexible in regard to scheduling of times and places of hearings and discovery devices . . .").

*Dobson,* 513 U.S. at 280 (citations omitted).  The United States Supreme Court has repeatedly confirmed that the FAA "reflects an emphatic federal policy in favor of arbitral dispute resolution."  *KPMG*, 132 S. Ct. at 25 (quoting *Mitsubishi Motors*, 473 U.S. at 631).

Courts throughout the country, including the United States Supreme Court, routinely enforce arbitration agreements in consumer contracts like the one here between Plaintiff and Discover.  *See*, *e.g.*, *CompuCredit Corp. v Greenwood*, 565 U.S. ___, 132 S. Ct. 665 (2012) (credit card agreement); *Concepcion*, 131 S. Ct. 1740 (cell phone services contract); *Buckeye Check Cashing*, 546 U.S. 440 (consumer loan agreement); *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444 (2003) (home improvement loan); *Randolph*, 531 U.S. 79 (finance contract for purchase of mobile home); *Dobson*, 513 U.S. 265 (termite protection contract); *Scott v. EFN Invs., LLC*, 312 F. App'x. 254 (11th Cir. 2009) (consumer sales contract for the purchase of a vehicle); *Livingston v. Assocs. Fin., Inc*., 339 F.3d. 553 (7th Cir. 2003) (home equity loan); *Sydnor v. Conseco Fin. Servicing Corp.*, 252 F.3d 302 (4th Cir. 2001) (home improvement loan agreement); *Johnson v. W. Suburban Bank*, 225 F.3d 366 (3d Cir. 2000) (consumer lending agreement); *Keith v. Wells Fargo Fin. Am., Inc.*, Case No. 8:10-cv-1588-T-33EAJ, 2010 WL 4647227 (M.D. Fla. Nov. 9, 2010) (consumer credit card agreement).

Similarly, numerous courts have enforced Discover's arbitration provision.  *See, e.g., Comrey v. Discover Fin. Servs., Inc*., 806 F. Supp. 2d 778 (M.D. Pa. 2011); *Martin v. Discover Bank*, No/ 12-2469, 2012 WL 6197992 (E.D. Pa. Dec. 3, 2012); *Black v. JP Morgan Chase & Co*., No. 10-848, 2011 U.S. Dist. LEXIS 99428 (W.D. Pa. Aug. 25, 2011); *Passmore v. Discover Bank*, No. 1:11-CV-01347, 2011 U.S. Dist. LEXIS 123918 (N.D. Ohio Oct. 26, 2011); *O'Fallon v. Encore Receivable Mgmt.*, 2011 WL 6762928 (S.D. Miss. Aug. 3, 2011*), aff'd*, 2012 WL 1109181 (5th Cir. Apr. 3, 2012); *Discover Bank v. Cook*, No. 2:05-cv-19, 2005 WL 1514034 (M.D. Ala. June 27, 2005); *Battels v. Discover Bank*, No. 2:03-cv-238, 2004 U.S. Dist. LEXIS 28012 (M.D. Ala. Aug. 27, 2004); *Shales v. Discover Card Servs., Inc*., No. 02-802, 2002 U.S.

Dist. LEXIS 16502 (E.D. La. Aug. 29, 2002); *Pick v. Discover Fin. Servs.*, No. 00-935, 2001 U.S. Dist. LEXIS 15777 (D. Del. Sept. 28, 2001).

Given the strong federal policy favoring arbitration, it is "the party resisting arbitration [which] bears the burden of proving that the claims at issue are unsuitable for arbitration." *Randolph,* 531 U.S. at 91; *see also Gilmer,* 500 U.S. at 26 (finding that "the burden is on [the party opposing arbitration] to show that Congress intended to preclude a waiver of a judicial forum"). Moreover, "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem. Hosp. v. Mercury Const. Co.*, 460 U.S. 1, 24-25 (1983).

A trial court's role in determining whether a motion to compel arbitration under the FAA should be granted is limited to a simple two-step inquiry:

- First, did the parties agree to arbitrate?

- Second, does the dispute fall within the scope of the arbitration provision?

9 U.S.C. §§ 2, 4; *see, e.g., Bazzle*, 539 U.S. at 451-53. If the Court determines that the answer to both questions is "yes," then the FAA requires the Court to enforce the arbitration agreement and compel arbitration. The FAA "leaves no place for the exercise of discretion by a [trial] court, but instead mandates that [trial] courts *shall* direct the parties to proceed to arbitration . . . ." *Byrd,* 470 U.S. at 218 (emphasis in original).

The Agreement accepted by Plaintiff unquestionably contains a written arbitration agreement, to which Plaintiff expressed her intention to be bound by accepting the Agreement. Thus, the first prerequisite to enforcement of the Parties' Arbitration Agreement is satisfied.

The next question is whether Plaintiff's Claims fall within the scope of the Arbitration Agreement. In making this determination, it should be noted that any questions or doubts about the arbitrability of a particular dispute or issue must "be resolved in favor of arbitration, whether

the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone*, 460 U.S. at 24-25.  And where the arbitration agreement is broad, as is the case here, there is a heightened presumption of arbitrability such that "[i]n the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 650 (1986) (quoting *United Steelworkers v. Warrior & Gulf Navigation Co*., 363 U.S. 574, 584-85 (1960)). As set forth below, however, the most important factor in the assessment of the arbitrability of Plaintiff's Claims is that the issue is one for the arbitrator to decide.

C.   **The FAA Requires That Plaintiff's Claims be Compelled to Arbitration.**

Federal law requires that arbitration be compelled here as Plaintiff's Claims are within the scope of claims covered by the Arbitration Agreement.  As the Eleventh Circuit has explained, "[u]nder the FAA, upon motion of a party, district courts *must* compel arbitration of *all claims subject to arbitration." American Express Fin. Advisors, Inc. v. Makarewicz,* 122 F.3d 936, 940 (11th Cir. 1997) (emphasis added).  In this case, by accepting the Agreement, Plaintiff agreed to arbitrate "any claim (except for a claim challenging the validity or enforceability of this arbitration agreement)" that she has against Discover.  *See* Ex. A, at p. 3.  If that provision, alone, were somehow insufficient to compel Plaintiff to bring her Claims against Discover in arbitration, the Arbitration Agreement further clarifies that it also "includes claims and disputes relating to any other Account or agreement you have or had with us."  *See id.*  As the allegations underlying Plaintiff's Claims are based on Plaintiff's account and her agreement with Discover, Plaintiff's Claims necessarily fall within the ambit of the Arbitration Agreement.

Finally, Plaintiff can make no serious argument that her Claims do not arise out of or relate to the Agreement and the relationship between the Parties arising by virtue of having

entered into the Agreement.  Simply put, all of the allegations underlying the Plaintiff's Claims are covered by the Arbitration Agreement in multiple ways and they must be arbitrated.

Accordingly, Plaintiff's Claims must be arbitrated in accordance with the Arbitration Agreement.  This is particularly true given the broad construction courts are required to give contractual arbitration provisions and the command to resolve any doubts in favor of arbitration. Therefore, if the Plaintiff desires to pursue her Claims against Discover, she should be compelled to initiate arbitration in accordance with the Arbitration Agreement and applicable law.  *See Keith*, 2010 WL 4647227, at *4 (compelling arbitration of FCCPA claims under the FAA); *cf.*, *Reeves v. Ace Cash Express, Inc.*, 937 So. 2d 1136, 1137 (Fla. 2d DCA 2006) (compelling arbitration of FCCPA claims under Florida Arbitration Code).

**D.  <u>These Proceedings Must be Stayed Pending Resolution of Plaintiff's Claims in Arbitration</u>.**

Once it is determined that the Claims asserted in a pending court action are subject to an arbitration agreement, the FAA mandates that the action on the claims be stayed pending arbitration of the claims.  *See* 9 U.S.C. § 3.  Section 3 provides that:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.

9 U.S.C. § 3.  As the United States Supreme Court has made clear, "state courts, as much as federal courts, are obliged to grant stays of litigation under § 3 of the [FAA]."  *Moses H. Cone*, 460 U.S. at 26.  Because all of the Claims at issue in this litigation are subject to arbitration, this litigation should be stayed while the claims are arbitrated.  *See, e.g., Default Credit Card Sys.* v. *Friedland*, 992 So. 2d 442, 445 (Fla. 3d DCA 2008) (upholding trial court's ruling to stay the

action and compel arbitration under the FAA); *Kyer* v. *Teen Challenge of Fl., Inc.,* 2008 WL 1849024, at *2 (M.D. Fla. April 24, 2008) (granting motion to compel arbitration and staying the proceeding); *Flach v. Clarendon Nat'l Ins. Co.,* 2004 WL 5042294 (M.D. Fla. April 8, 2004) (granting Defendant's Motion to Stay Litigation and to Compel Arbitration).

## CONCLUSION

The Agreement Plaintiff entered into, which is fair and enforceable, requires Plaintiff to arbitrate this dispute.  The Federal Arbitration Act therefore requires this Honorable Court to stay the proceedings relating to Plaintiff's Claims, including all discovery, and compel arbitration of Plaintiff's Claims.

Specifically, Discover respectfully requests that this Court enter an Order:

a.     staying litigation of Plaintiff's Claims relating to Plaintiff's Complaint, including all discovery;

b.     requiring Plaintiff to initiate arbitration of her Claims pursuant to the terms of the parties' Arbitration Agreement within sixty (60) days of the entry of an order on this Motion; and

c.     instructing Plaintiff that should she fail to initiate arbitration of her Claims in accordance with the Court's order, her Claims herein shall be dismissed with prejudice, without the requirement of a hearing, upon simple written notice from counsel for Discover of such a failure.

## Local Rule 3.01(g) Certificate

Pursuant to Local Rule 3.01(g), counsel for Discover, Justin L. Dees, conferred with counsel for the Plaintiff, Christopher W. Boss, on multiple occasions and Plaintiff does not consent to the specific relief requested herein.  Plaintiff's counsel and Discover's counsel are, however, continuing to actively work towards a resolution of this Motion.

Respectfully submitted this 15th day of June, 2015.


                              /s/ Justin L. Dees
                              Justin L. Dees, Esquire
                              Florida Bar No. 048033
                              jdees@trenam.com
                              Roxanne Fixsen, Esquire
                              Florida Bar No. 0035733
                              rfixsen@trenam.com
                              Megan W. Murray, Esquire
                              Florida Bar No. 0093922
                              mwmurray@trenam.com
                              TRENAM KEMKER
                              200 Central Avenue, Suite 1600
                              St. Petersburg, FL  33701
                              Tele:  727.896.7171
                              *Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing motion was electronically

filed on June 15, 2015, with the Clerk of Court by using the CM/ECF system, which will send

notice of electronic filing to the following attorney:

Christopher W. Boss,
Boss Law PLLC
9887 Fourth Street North, Suite 202
St. Petersburg, Florida 33702
Email: CWBservice@protectyourfuture.com
Service Email: cpservice@protectyourfuture.com
Phone: (727) 471-0039
Fax: (888) 503-2182
*ATTORNEY FOR PLAINTIFF*

_____/s/ Justin L. Dees_____
Attorney

14

9627662v1